# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## ***

LANCE T. OTTERSTEIN,

              Plaintiff,

vs.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

2:13–cv–02311–JCM–VCF

**REPORT AND RECOMMENDATION**

This case involves judicial review of an administrative action by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Lance Otterstein's application for supplemental social security income pursuant to Title II of the Social Security Act. Before the Court is Plaintiff's motion for reversal or remand (#18),[1] the Defendant's cross motion to affirm the commissioner's decision (#19), the Government's response to Plaintiff's motion for reversal (#20), and Plaintiff's reply to the Government's response (#21). This action was referred to the undersigned Magistrate Judge for a report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4. For the reasons stated below, the court recommends that the Plaintiff's motion for reversal and remand (#18) be denied.

## BACKGROUND

On December 10, 2008, Lance Otterstein applied for social security disability benefits. (A.R. 35). The claim was initially denied because the application form was not signed. (A.R. 64). After a request for reconsideration, Otterstein's application was again denied on June 3, 2011. (A.R. 69).

---

[1] Parenthetical citation refers to the Court's docket number.

Otterstein then requested an ALJ hearing (A.R. 72), which was held on May 8, 2012. (A.R. 43, 81). At the hearing, Otterstein alleged an onset date of October 31, 2004 and stated that he was disabled due to neck and back pain caused by several vehicular accidents. (A.R. 44). The ALJ issued an unfavorable decision on May 24, 2012. (A.R. 24, 37-35). The Appeals Council denied Otterstein's request for review on August 7, 2013. (A.R. 6-11). At that point, the ALJ's May 24, 2012 decision became the final decision of the Commissioner.

A vocational expert ("VE") testified at Otterstein's hearing. (*See* A.R. 54-57). The ALJ posed a hypothetical which included the light work restriction and Otterstein's status post cervical and lumbar spine fusion, history of chronic pain, and inability to stoop. (A.R. 54-55). The VE testified that Otterstein's skills as a carpenter would not be transferable to another job but that there were unskilled jobs that Otterstein could perform based on the hypothetical posed by the ALJ. (A.R. 55). Those jobs were survey worker, laundry sorter, and information clerk; all of which may be performed at the light exertional level. (A.R. 55). Otterstein's attorney then posed several questions to the VE, confirming that the light jobs mentioned required standing for six hours in an eight hour work day and that a person who could stand only three hours per day and sit only four to five hours per day would not qualify for sedentary work. (A.R. 56).

The ALJ found that Otterstein had last met the insured status requirements of the Social Security Act on June 30, 2010. (A.R. 29). He also found that Otterstein had the following severe impairments from the alleged onset date of October 31, 2004 through the last insured date of June 30, 2010: "degenerative disc disease status-post cervical and lumbar spine fusion." (A.R. 29). In determining Otterstein's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b). Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; he could sit, stand and/or walk for six hours out of an eight-hour workday; he could occasionally

2

climb stairs and ramps; he is not to climb ladders, ropes or scaffolds; he could occasionally balance, stoop, crouch, crawl and kneel; he could frequently reach overhead bilaterally; and he is to avoid all exposure to heights and dangerous moving machinery.

(A.R. 30).

The ALJ found that, through the date last insured, Otterstein was unable to perform his past relevant work as a carpenter. (A.R. 33-34). As mentioned by the ALJ, the job of carpenter as performed by Otterstein would be at a heavy exertional level. (A.R. 34). The ALJ described Otterstein as a younger individual on the date last insured,[2] with at least a high school education, who is able to speak English. (A.R. 34). At step five, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (A.R. 34).

## STANDARD OF REVIEW

Before reaching the merits of this case, the court reviews the relevant standard of review and the Supplemental Security evaluation process. Both are discussed below.

### I.  Standard of Review

Where the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g). The District Court may refer social security appeals to a United States Magistrate Judge.  *See* 28 U.S.C. § 636(b). A court "may reverse the ALJ's[3] decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence. Substantial evidence is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhardt*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). If an ALJ's decision is supported by substantial evidence, the Court

---

[2]  Born May 5, 1968, Otterstein was forty-two years old in 2010. (A.R. 34). The Code of Federal Regulations defines a younger individual as someone aged eighteen to forty-nine years old. 20 C.F.R. 404.1563.

[3] "ALJ" refers to the administrative law judge.

3

must affirm that decision even if it would have decided the matter differently. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). "We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations removed).

## II. The Evaluation Process

An individual seeking supplemental security income has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To overcome this burden, the individual must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual must provide "specific medical evidence" in support of her disability claim. 20 C.F.R. § 416.914. If the individual has established an inability to perform her prior work, the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 2004) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ uses a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines a finding of disability or non-disability can be made, that determination will be made and no further inquiry is required. *See* 20 C.F.R. § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

At the first step, the ALJ will determine whether the claimant is currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(b). If an individual is found to currently engage in SGA, a finding of not disabled will be made, regardless of age, medical condition, education, or work

4

experience. 20 C.F.R. § 416.920(b). If the individual is not engaging in SGA, the analysis proceeds to the next step.

At the second step, the ALJ must determine whether the claimant suffers from a medically determinable impairment that is severe or a combination of medical impairments that significantly limits the claimant from performing basic work duties. 20 C.F.R. § 416.920(c). When medical or other evidence only establishes a slight abnormality that would have no more than a minimal effect on the claimant's ability to work the ALJ will find that a severe impairment is not present. 20 C.F.R. § 416.921; Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p.[4] If the ALJ finds no severe impairments or combination of impairments, a finding of not disabled will be made. 20 C.F.R. § 416.920(a)(4)(ii). If, however, the ALJ finds severe impairments, the analysis will continue.

At the third step, the ALJ will consider whether the claimant's impairments, alone or in combination, meet or medically equal the criteria of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d), 416.925, and 416.926. Additionally, duration criteria must be met. 20 C.F.R. § 416.909. The impairment will meet the duration criteria if it is expected to last for life or if it has lasted or is expected to last for a continuous period of at least twelve months. *Id*. If the impairments or combination of impairments meet or medically equal the listed criteria, and the duration requirement has been met, a finding of disabled will be made and the claimant will be entitled to disability benefits. 20 C.F.R. § 416.920(a)(4)(iii). If not, the inquiry will proceed to the next step. *Id*.

At the fourth step, the ALJ will determine whether the claimant maintains the residual functional capacity ("RFC") to perform her past relevant work ("PRW"). 20 C.F.R. § 416.920(f). PRW is work the claimant has performed within the past fifteen years that was SGA and that the claimant performed for a period great enough to learn how to perform it. 20 C.F.R. § 416.960(b)(1).  If the ALJ determines the

---

[4] SSR are the Social Security Administration's official interpretations of the Social Security Act and the Administration's regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). SSR are entitled to a measure of deference from the courts as long as the SSR are consistent with the Social Security Act and the Administration's regulations. *Id.* at 1223.

claimant can continue to perform her PRW, the claimant will be considered not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is unable to perform her PRW, the inquiry will continue to the last step. *Id.*

At the fifth step, the ALJ will determine whether the claimant may perform any work other than her PRW, taking into consideration her RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). At this step, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work and that other work exists in significant amounts within the national economy. *Yuckert*, 482 U.S. at 141-42. If the Commissioner fails to show that other work the claimant can perform is available in the national economy, a finding of disabled will be made. 20 C.F.R. § 416.920(a)(4)(v).

**DISCUSSION**

Otterstein makes six separate arguments to refute the ALJ's finding that Otterstein is not disabled. The first five arguments stem from what Otterstein describes as the ALJ's mischaracterization of Dr. Gordon's opinion. Specifically, Otterstein argues (1) the ALJ erred in determining Otterstein could perform a reduced range of light work because the ALJ misevaluated Dr. Gordon's opinion; (2) Otterstein is only capable of three to four hours of walking or standing and, therefore, he is unable to perform light work; (3) Otterstein may never stoop and, therefore, is unable to perform light work and a portion of sedentary work; (4) Otterstein can only sit for four to five hours, disqualifying him from sedentary work, which requires sitting for six hours; (5) the wording of the ALJ's RFC finding is ambiguous; and (6) the ALJ impermissibly ignored Dr. Oliveri's opinions. (*See* #18 at 5-11). These errors, Otterstein argues, entitle Otterstein to reversal of the ALJ's opinion and an award of benefits, or, alternatively, remand of the case to the ALJ for reconsideration. (#18 at 10). This report and recommendation will address each argument in turn.

1

### I.  Did the ALJ Mischaracterize Dr. Gordon's Opinion?

2

#### A.  Otterstein's Ability to Perform Light Work

3      First, Otterstein argues that the ALJ misevaluated Dr. Gordon's opinion, resulting in the

4  improper RFC assessment of light work. (#18 at 4-5). The ALJ determined that Otterstein suffered from

5  degenerative disc disease, status-post cervical and lumbar spine fusion surgeries. (A.R. 29). He then

6  determined that, although this injury was severe, Otterstein retained the RFC to perform a reduced range

7  of light work. (*See* #18 at 4-5, A.R. 30). The ALJ specifically found that, "through the date last insured,

8  the claimant had the residual capacity to perform *less than the full range of light work* as defined in 20

9  C.F.R. 404.1567(b)." (A.R. 30). In determining that Otterstein maintained the above RFC, the ALJ

10  stated that he credited the opinion of Dennis Gordon, M.D. and that Dr. Gordon's opinion supported the

11  light work assessment. (*See* #18 at 5, A.R. at 33). (#18 at 5).

12      The ALJ stated that he considered Dr. Gordon's opinion and gave it significant weight. (A.R.

13  33). The ALJ mentioned that Dr. Gordon "opined light limitations." (A.R. 33). Dr. Gordon's December

14  7, 2010 opinion states that the "[v]ocational level for this patient is light sedentary." (A.R. 749). Reading

15  that comment in the light most favorable to Otterstein would result in an opinion that Otterstein could

16  perform work at the sedentary level. However, Dr. Gordon asserted that Otterstein's maximum capacity

17  to lift or carry was twenty-five pounds (A.R. 749), which supports light level RFC. SSR 83-10, 1983

18  WL 31251, at *5 ("The regulations define light work as lifting no more than 20 pounds at a time with

19  frequent lifting or carrying of objects weighing up to 10 pounds."). In fact, Dr. Gordon states that

20  Otterstein could "occasionally lift thirty pounds and frequently lift thirty pounds." (A.R. 749).

21      Additionally, in making his determination, the ALJ chose to credit the Agency physician who

22  reviewed Otterstein's case and stated that the limitations imposed by Dr. Gordon were too severe. (A.R.

23  33) ("The undersigned considered and gives great weight to the physical State agency review physician.

24  . . ."). The ALJ also considered objective medical evidence available to him including x-rays of

25

Otterstein's cervical and lumbar spines, a lower extremity venous duplex scan, a magnetic resonance imaging ("MRI") test, and a computerized tomography ("CT") scan. (A.R. 31-32). After reviewing all of this evidence, the ALJ found that Otterstein was capable of performing less than the full range of light work. (A.R. 30). Based on the VE's testimony, the ALJ then concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (A.R. 34).

The ALJ explained that, if Otterstein had been capable of performing the full range of light work, a finding of not disabled would have been warranted. (A.R. 34). When a claimant's exertional limitation falls between two grid rules (i.e., between light and sedentary) "the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful working in the economy." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (citations removed) (holding that an ALJ did not err in addressing how severely the number of light jobs were reduced due to the specific limitations of a claimant who could perform less than a full range of light work). The ALJ in this matter consulted the VE and crafted a hypothetical that addressed all of the limitations the ALJ would later find in his decision. (A.R. 54-55).

When the hypothetical presented to the VE contains all the limitations the ALJ found were credible and supported by substantial evidence in the record the ALJ's reliance on the VE's testimony is proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Furthermore, the ALJ is "not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even where there is conflicting medical evidence. *Id.* at 756-57.

Because he found Otterstein unable to perform the full range, the ALJ asked the VE about how these limitations would erode the unskilled light occupational base. (A.R. 34). In the hypothetical to the VE, the ALJ specified that the hypothetical man could perform light work but could handle only

8

"occasional climbing of stairs or ramps and no climbing of ladders, ropes or scaffolds, balancing, stooping, kneeling, crouching and crawling all limited to occasional, overhead reaching limited to frequent with both arms . . . ."(A.R. 55). These are the same limitations found by the ALJ in his opinion. (*See* A.R. 30). Given those limitations, the VE still found that the hypothetical man in Otterstein's position would be capable of performing the occupations of survey worker, laundry sorter, and information clerk. (A.R. 34-35, 55).

In discussing Dr. Gordon's opinion, the ALJ stated that Gordon's opinion "was based on an in-person exam, the assessment is complete, specific facts are cited upon which the conclusion is based, and is substantially/largely consistent with the record as a whole." (A.R. 33). The ALJ gave Dr. Gordon's opinion "significant weight." In discussing the Agency physician's opinion, the ALJ stated that that opinion was "consistent with" the medical evidence, "which show[s] mild degeneration in the cervical spine" and with the record as a whole. (A.R. 33). The ALJ gave the Agency physician's opinion great weight. (A.R. 33). To the extent Dr. Gordon's opinion conflicted with Dr. Dhaliwal's, the ALJ resolved those conflicts in favor of Dr. Dhaliwal.

It is the responsibility of the ALJ to determine a claimant's residual functional capacity. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). "The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Here, the ALJ chose to credit the Agency physician's opinion over Dr. Gordon's. He gave "specific and legitimate reasons" for doing so. *Lester v. Chater*, 81 F.3d 821, 830-31 (1995). Namely, Dr. Dhaliwal's opinion was consistent with the objective medical evidence and with the record as a whole. (A.R. 33).

The ALJ specifically found that Otterstein is capable of performing *less than* the full range of light work. (A.R. 30). Dr. Gordon opined that Otterstein could perform "light sedentary" work. (A.R.

9

749). The ALJ was not bound to adopt this RFC finding, however, and the ALJ determined that Otterstein was capable of performing light work. *See* 20 C.F.R. § 404.1527 ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); A.R. 30. Dr. Dhaliwal, the Agency medical consultant, stated that Dr. Gordon's assessment was too restrictive. (A.R. 757). He determined that Otterstein retained the ability to stand and/or walk for six hours in an eight hour work day and possessed the RFC for light work. (A.R. 752). This is substantial evidence on which the ALJ properly relied.

### B. Otterstein's Ability to Stand and Walk

Second, Otterstein maintains that he is only capable of three to four hours of walking or standing and, therefore, he is unable to perform light work. (#18 at 5). He argues that this limitation disqualifies him from light work because the full range of light work requires that an individual be able to stand/walk for up to six hours per workday, (#18 at 5) (citing SSR 83-10, 1983 WL 31251, at *3 (Jan. 1, 1983). The vocational expert testified to that effect, stating that a person who could only stand for three hours per day would not qualify for light work, which requires standing for six hours per day. (A.R. 56). Dr. Gordon opined that Otterstein could stand and/or walk (cumulatively) for three to four hours per day. (A.R. 749). The ALJ found that Otterstein "could sit, stand and/or walk for up to six hours in an eight-hour workday." (A.R. 30).

As mentioned above, it is the responsibility of the ALJ to determine a claimant's residual functional capacity. *Vertigan*, 260 F.3d at 1049. The ALJ reviewed all the medical evidence in the record and determined that Otterstein could sit for six hours in an eight hour work day. (A.R. 30). This assertion is supported by Dr. Dhaliwal's opinion that Otterstein could stand and/or walk for six hours in an eight hour work day. (A.R. 752). Where medical testimony is conflicting, it is the ALJ's role to determine credibility and to resolve the conflict. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Where, as here, the evidence admits of more than one rational interpretation, we must uphold the

decision of the ALJ. *See Allen v. Secretary of Health & Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984).

### C.  Otterstein's Ability to Stoop

Third, Otterstein argues that his inability to stoop eliminates his capacity for light work and "severely erodes" his capacity for sedentary work. (#18 at 6). Many light occupations require stooping, at least occasionally. SSR 83-10, 1983 WL 31251, at *6 (January 1, 1983). "[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)." SSR 83-14, 1983 WL 31254, at *2 (January 1, 1983). According to Otterstein the inability to stoop "also severely erodes, if not eliminates, the sedentary occupational base." (#18 at 6) (citing SSR 96-9p, 1996 WL 374185[5] (July 2, 1996)). SSR 96-9p states, "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. Otterstein argues that a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . .." SSR 96-9p, 1996 WL 374185, at *8.

Dr. Gordon opined that Otterstein could never bend or stoop[6] (A.R. 749). The ALJ, determined, however, that Otterstein could stoop occasionally. (A.R. 30). Otterstein argues that, had the ALJ properly characterized Dr. Gordon's opinion, the ALJ would have determined that Otterstein could never stoop. (*See* #18 at 6). The condition that Otterstein could stoop only occasionally was included in the hypothetical posed by the ALJ to the VE. (A.R. 55). In response to that hypothetical, the VE testified that there were light jobs in the economy, present in substantial numbers, that Otterstein could perform. (*Id.*).

---

[5] Citation is given as SSR 96-9p, 1996 WL 374186 (S.S.A. 1996). Since this Westlaw citation does not lead to SSR 96-9p, the court uses the proper citation to avoid confusion.

[6] Dr. Gordon's assessment lists Otterstein's postural capacity stating, "The patient is able to do the following as described . . . Stopping [*sic*]/Bending Never."

Although the ALJ gave Dr. Gordon's opinion significant weight, he did not give it controlling weight. (*See* A.R. 33). He also took into account the opinion of the Agency physician, Dr. Dhaliwal, who opined that Dr. Gordon's assessment was too restrictive. (A.R. 757). A physician's opinion is not necessarily conclusive "as to either a physical condition or the ultimate issue of disability." *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where medical testimony is conflicting, it is the ALJ's role to determine credibility and to resolve the conflict. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ. *Allen v. Secretary of Health & Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984).

Dr. Dhaliwal opined that Otterstein could occasionally stoop. (A.R. 753). Dr. Dhaliwal noted that Otterstein had suffered various spine-related injuries but that "gait, heel, toe walk is normal," and "tandem is normal." (A.R. 758). He further noted that Otterstein was able to care for himself, complete light housework, drive, and shop, and concluded that a light RFC was appropriate in Otterstein's case. (A.R. 758). Based on the report of Dr. Dhaliwal stating that Dr. Gordon's opinions were too restrictive (A.R. 757) and other objective evidence on the record, the ALJ's finding that Otterstein was capable of stooping occasionally was supported by substantial evidence. (A.R. 30).

### D.  Otterstein's Ability to Sit

Fourth, Otterstein argues that he can only sit for four to five hours, effectively disqualifying him from sedentary work, which requires sitting for six hours. (#18 at 7). Dr. Gordon stated that Otterstein could sit for four to five hours per workday. (A.R. 749). According to Otterstein, this casts doubt on Otterstein's ability to perform sedentary work because sedentary work generally requires sitting for up to six hours. (#18 at 7). Additionally, the vocational expert testified that an individual who could only sit for four to five hours per day would not qualify for any sedentary jobs. (#18 at 7) (citing A.R. 56).

The ALJ noted the VE testimony that, given Otterstein's RFC of less than light work, Otterstein would still be capable of performing certain jobs that exist in the national and local economy. (A.R. 34). The VE testified that a man capable of performing work at the light exertional level would be able to perform certain jobs. (A.R. 55). The hypothetical posed by the ALJ did not contain the restriction that Otterstein would not be able to sit for the full six hours. (*Id.*). It did, however, contain the restriction, which the ALJ later adopted, that Otterstein was capable of light work with the additional limitations described above. (*Id.*). The VE that Otterstein was capable of performing the jobs of survey worker, laundry sorter, and information clerk. (*Id.*). In response to a question by Otterstein's lawyer, the VE testified that a person who could only sit for four to five hours a day would not qualify for sedentary work under the DOT. (A.R. 56).

Dr. Gordon stated that Otterstein had the capacity to sit cumulatively for four to five hours per day. (A.R. 749). Dr. Gordon also opined, however, that, "[a]lternating between standing and sitting with standard breaks and lunch would provide sufficient relief to the patient. Due to condition of neck and spine patient would be more comfortable with a larger majority of sitting time as opposed to prolonged standing or walking." (A.R. 749). Even under Dr. Gordon's view that Otterstein could only sit for four to five hours per day and stand/walk for three to four hours per day (A.R. 749), Otterstein is still capable of working for a full eight hour day. Dr. Dhaliwal opined that Otterstein was capable of sitting for six hours in an eight hour workday. (A.R. 752).

As mentioned previously, where medical testimony is conflicting, it is the ALJ's role to determine credibility and to resolve the conflict. *Allen*, 749 F.2d at 579. Here the ALJ has done so. He gave great weight to Dr. Dhaliwal's opinion and significant weight to Dr. Gordon's. (A.R. 33). Dr. Dhaliwal reported that Dr. Gordon's opinions were too restrictive. (A.R. 757). Based on this opinion and other objective evidence on the record, the ALJ's finding that Otterstein was capable of stooping occasionally was supported by substantial evidence. (A.R. 30).

13

### E.  The Ambiguous ALJ Finding

Fifth, Otterstein claims that the ALJ's finding relating to RFC is ambiguous. (#18 at 5-6). The ALJ states that Otterstein "could sit, stand and/or walk for six hours out of an eight-hour workday. . .." (A.R. 30). Otterstein states, "[o]ne may wonder whether the ALJ meant that Otterstein could sit, stand and walk in combination for a total of only six hours per workday. In other words, Otterstein could perform no more than six hours of work per workday." (#18 at 6, n. 2). If Otterstein cannot perform six hours of work in a workday, Otterstein argues, this equates to an "inability to perform 'regular and continuing' work," which requires eight hours of work per day for fix days per week (or the equivalent). (#18 at 6, n. 2) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)). Otterstein argues that this statement could be read either that Otterstein's capacity varied day by day and could conceivably fall below the full eight hours required for "regular and continuing" work. SSR 96-8p, 1996 WL 374184, at *1. This argument is without merit. (*See* #18 at 7).

Social Security Ruling 96-8p states, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. The SSR goes on to explain, "The ability to work 8 hours a day for 5 days a week is not always required *when evaluating an individual's ability to do past relevant work at step 4* of the sequential evaluation process." *Id*. at *2, n. 2 (emphasis added). The ALJ stated that Otterstein was incapable of performing his past relevant work at step four. (A.R. 33-34). The SSR does not mention whether the requirement applies to the determination of whether there is any work in the national economy that the claimant can perform at step five.

The view that the ALJ's statement should be read to mean that Otterstein can sit for six hours and can stand/walk for six hours in an eight hour workday is supported by the opinion of the SSA reviewing physician, whose opinion the ALJ gave "great weight." (A.R. 33). The Agency reviewing

physician opined that Otterstein could sit for six hours in an eight hour workday and could stand or walk for six hours in an eight hour workday. (A.R. 752). A common sense reading of the ALJ's comments indicates that the ALJ meant to convey that Otterstein could sit for six hours and stand or walk for six hours in an eight hour work day. Dr. Gordon opined that "[s]tandard breaks and lunch periods would provide [Otterstein] with sufficient relief to allow work for 8 hours." (A.R. 749). It appears that Dr. Gordon believed that Otterstein was able to work.

To the extent Otterstein argues that the ALJ did not rely on the Agency physician and that the SSA proffers this argument on a post-hoc basis, this allegation is without merit. (*See* #21 at 4, 6). The Agency physician opined that Otterstein could perform light work and that Dr. Gordon's assessment was too restrictive. (A.R. 757). The Agency physician also stated that Otterstein was capable of standing and/or walking for six hours per day and sitting for six hours per day. (A.R. 752). The ALJ specifically mentioned that he gave the Agency physician's opinion "great weight." (A.R. 33). This is not a new argument contrived by the SSA for the purposes of this social security appeal but a portion of the ALJ's decision which the SSA is entitled to utilize.

Finally, Otterstein's own reply to the SSA's cross motion to affirm evidences Otterstein's understanding of the ALJ's words. (*See* #21 at 5). The reply stated, "the ALJ determined that Lance Otterstein is able to stand/walk for up to six hours per workday; sit for up to six hours per workday; *and* stoop for up to 1/3 of the workday . . .." (#21 at 5) (emphasis added). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). To the extent the ALJ's opinion is ambiguous, a common sense reading should be used. *See Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) ("When a claimant argues that there are fatal gaps or contradictions in the administrative law judge's opinion . . . we give the opinion a commonsensical reading rather than nitpicking at it.").

The SSA's reliance on *Stubbs-Danielson* for the proposition that the ALJ can translate doctors' opinions about limitations into an RFC finding is misplaced in this case. (*See* #19 at 5). In *Stubbs-Danielson*, the ALJ "translated Stubbs–Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, no translation was needed because Dr. Gordon gave his opinion as to Otterstein's proper RFC and to the limitations that would need to be addressed by the ALJ. (A.R. 749). Dr. Gordon gave his opinion on Otterstein's ability to stand, walk, sit, stoop, kneel, crouch, balance, and climb, among other things. (A.R. 749).

This does not mean, however, that Otterstein's contention that the ALJ rejected Dr. Gordon's opinion is correct. (*See* #21 at 6). It simply means that the ALJ took Dr. Gordon's opinion into account and gave the Agency non-examining physician's opinion greater weight than Dr. Gordon's. Because the ALJ included "specific and legitimate reasons," *Lester*, 81 F.3d at 830-31, for doing so, this does not constitute reversible error.

## II. Did the ALJ Impermissibly Ignore Dr. Oliveri's Opinion?

Sixth, Otterstein alleges that the "ALJ impermissibly ignored the opinions of Dr. Oliveri." (#18 at 10). Dr. Oliveri examined Otterstein on May 18, 2005 and concluded that Otterstein had reached maximum medical improvement with respect to his lumbar spine and had realized most of his improvement with respect to his cervical spine. (A.R. 570).[7] He conducted psychological tests and determined that Otterstein's reported pain levels were consistent with objective medical evidence. (A.R. 583). After an examination of Otterstein and a thorough review of his medical history (A.R. 558-72), Dr. Oliveri also opined that Otterstein's "true abilities" on a day-to-day basis are less than sedentary and recommended that Otterstein pursue social security benefits. (A.R. 571).

---

[7] Dr. Oliveri's opinion is found at A.R. 557-572 and is duplicated at A.R. 573-588.

16

Otterstein argues that the opinion of an examining physician may not be rejected without specific and legitimate reasons supported by substantial evidence in the record under *Lester v. Chater.* (#18 at 11). The Ninth Circuit court in *Lester* states that an examining physician's opinion, "even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31; SSR 96-8p, 1996 WL 374184 (if the ALJ wishes not to adopt any medical source statement in the record, the ALJ must articulate good reason for the omission). The ALJ does not mention Dr. Oliveri's report in his decision. He does not reject Dr. Oliveri's opinion but simply fails to mention it. In fact, the ALJ stated that he considered "all the medical records (Exhibits 1F – 18F, and 25F-28F)." (A.R. 32). Notes from Dr. Oliveri's examination are labeled Exhibits 9F and 10F.

In rejecting Dr. Kabins' opinion from October 13, 2004 stating that Otterstein was disabled, the ALJ claimed that the statement "was made while the claimant was preparing for surgery from which he has since recovered." (A.R. 33). The ALJ asserted that he gave Dr. Kabins' opinion little weight because that opinion was "no longer consistent with the objective medical evidence of record that shows recovery from surgery without complication." (A.R. 33). Dr. Kabins' opinion is also contradicted by the fact that, although Kabins opined that Otterstein was disabled, Otterstein continued to work until 2005. (A.R. 31).

Dr. Oliveri's examination occurred approximately seven months after Dr. Kabins'. Dr. Oliveri stated, "[a]lthough it is possible that the examinee at this time would be capable of sustained employment in a sedentary capacity, it is my opinion that probably his true abilities on a day-in-and-day-out basis are subsedentary." (A.R. 571). He recommended that Otterstein apply for social security benefits on that basis. (*Id.*).

Dr. Gordon's examination, which occurred in 2010, after two more automobile accidents, resulted in an RFC assessment of "light sedentary." (A.R. 749). Read in the light most favorable to the

17

Plaintiff, this means that Otterstein is capable of performing sedentary work, a finding which contradicts the opinions of both Dr. Kabins and Dr. Oliveri, who believed Otterstein to be disabled. Dr. Dhaliwal found Otterstein to be capable of performing light work. (A.R. 757). This is substantial evidence, in the record, by an examining physician whose opinion the ALJ credited and gave significant weight. Additionally, a physical examination in March of 2009, cited by the ALJ, revealed normal balance, normal gait and stance, and normal reflexes. (A.R. 32, 678). That same physician noted that Otterstein "did not appear uncomfortable." (A.R. 677). The ALJ stated that he considered "the entire record"  and found that Otterstein was capable of performing less than a full range of light work. (A.R. 30).

Finally, Otterstein argues that the implicit rejection of Dr. Oliveri's opinion is clear prejudice because, if the ALJ had credited Dr. Oliveri's opinion, Otterstein would have been found to be disabled. (#21 at 6). Even if the ALJ had erred in failing to mention Dr. Oliveri's opinion, that error would be harmless. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error doctrine where substantial evidence supporting the ALJ's opinion was present). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (internal quotations removed). Dr. Oliveri's examination occurred in 2005. Several years have passed since then and more recent physician's examinations have resulted in less restrictive opinions, including Dr. Gordon's and Dr. Dhaliwal's. (A.R. 747-50 and 751-58). Even if the ALJ had credited Dr. Oliveri's opinion, it is not clear that this would have resulted in a finding of disability. *See* 20 C.F.R. § 404.1527 ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

//

//

18

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Plaintiff's motion for reversal (#18) be DENIED.

IT IS FURTHER RECOMMENDED that Defendant's cross motion to affirm (#19) be GRANTED.

DATED this 7th day of August, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE